IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-12-GMS |
| | : | |
| | : | |
| TRACY FISHER | : | |
| | : | |
| Defendant. | : | |

**BRIEF ON ISSUES RELATED TO SENTENCING ENHANCEMENTS**

Penny Marshall, Esquire
Federal Public Defender
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010
Attorney for Defendant Tracy Fisher

Date: November 21, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      PROCEDURAL POSTURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT

        A.  The Enhancements must be proven beyond a reasonable doubt . . . . . . . . . . . 5

        B.  The facts supporting the enhancements under U. S. S. G. 3A1.2(c)(1) and 2K2.1(b)(5) were not proven beyond a reasonable doubt or by a preponderance of the evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.  Imposition of enhancements under both U. S. S. G. 3A1.2(c)(1) and 2K 2.1(b)(5) constitutes double counting . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.  Stolen Weapon Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **TABLE OF AUTHORITIES**

Apprendi v. New Jersey, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Blakely v. Washington, 124 S. Ct. 2531 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Clark v. Martinez, 125 S. Ct. 716 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Crowell v. Benson, 285 U. S. 22, 62 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jones v. United States, 526 U.S. 227 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Ring v. Arizona, 536 U. S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Booker, 124 S. Ct 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Bowie, 198 F.3d 905 (D. C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Chichy, 1 F.3d 1501, 1506-07 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Coldern, 359 F.3d 1253 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1027 (D. Neb. Feb 1, 2005) . . . . . . 8

United States v. Jackson, 276 F.3d 1213 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Malouf, 377 F. Supp. 2d 315, 324 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . 7

United States v. Mobley, 956 F.2d 450 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

United States v. Ochoa-Suarez, 2005 WL 287400, 2005 U. S. Dist. Lexis 1667 (S. D. N. Y. Feb. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Shepard, 125 S. Ct. 1254 (2005)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Sielgelbaum, CR No 02-179-PA (D. Or. Jan, 2005) . . . . . . . . . . . . . . . . . . . . 7

United States v. Werlinger, 894 F.2d 1015 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES & OTHER AUTHORITIES**

U. S. S. G. 2K 2.1(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U. S. S. G. 3A1.2(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Weinstein's Evidence, § 801(d)(1)(A) [01] (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.       **PROCEDURAL POSTURE OF THE CASE**

This case arose after charges were brought against Mr. Fisher and subsequently dismissed in Delaware state court for an event occurring on January 15, 2005. Jurisdiction was transferred to this Federal District Court, where Mr. Fisher was indicted on a single count of felon in possession. On July 19, 2005, Mr. Fisher pled guilty to the one count indictment, admitting that he was a felon, and that he possessed a weapon that the government could prove was not manufactured in Delaware. This pleading addresses the government's efforts to escalate Mr. Fisher's guideline range from the admitted conduct, suggesting a guideline range of 30-37 months, to a range of 108-120 months. The enhancements include two points for having a stolen weapon, four points for committing another felony offense (assaulting a police officer) while being a felon in possession, and six more points for creating a substantial risk of bodily harm by assaulting a police officer during flight, where the defendant was aware or had reason to know that a police officer was involved.

## II.    STATEMENT OF FACTS

On October 17, 2005, the Court held an evidentiary hearing in which the government called a single witness to the events that are said to have transpired several months before, on January 15, 2005.

At the hearing, Detective Jeffrey Silvers, a Wilmington Police Officer, testified to being on uniform car patrol with his partner, Detective Janvier.  At about 7:15 p.m, he spoke to an individual standing on the street concerning an allegation that is no longer at issue in these proceedings.[1]  As a result of the conversation, Detective Silvers followed behind two individuals he observed traveling northbound on Adams Street. (Tr. 20)  The two persons turned eastbound on Fifth Street; when he followed suit, he lost sight of the individuals.  According to Detective Silvers, an unknown female standing on the street pointed to an alley on the north side of Fifth Street. (Tr. 21)  Detective Silvers pulled his car over, shined a light in the alley, and ordered the "two subjects" he observed in the alley to stop. (Tr. 21)  This incident occurred at night -- two hours after sunset-- and the north side of the street did not have street lights. (Tr. 45)  During the next forty-five seconds, Detective Silvers lost sight of the individuals that he was following, for twenty of those seconds. (Tr. 73)

Detective Silvers said that the men went into the rear yards of the houses on Fifth Street. Detective Silvers' description of his location varied.  He said that he went to Adams Street to cut

---

[1] Originally, the government had requested that the Court consider an allegation that an attempted robbery offense occurred.  The government did not subpoena the witness, who was under a criminal sentence, nor did the officer have the witness give a statement at the police station. (Tr. 65) The officers' hearsay account of the events of what transpired was not subject to cross examination, including a sheet listing the complainant's record.  The court ruled that absent the witness, it would not consider this evidence. (Tr. 66).

2

the men off and ran south on Adams Street and was at the back corner of the houses on Adams Street. (Tr. 21)  He said he could *hear* "people jumping fences in the back" of the houses.[2]  ( Tr. 23)  He said that he could see the men "coming over fences" and "go down in the yards out of sight." (Tr. 23) At the same time, he testified that he "never got off Fifth Street" and that he "never went to where the back yards" were, where he said the men were located.  ( Tr. 23, 47) He also testified that he stopped "at the corner of the last house on Fifth Street."  (Tr. 23) Detective Silvers testified that Detective Janvier, who did not appear at this hearing, initially ran up the alley off of Fifth Street behind the men, and then to Fifth and Adams Streets and then back down Fifth Street going east.

Detective Silvers recounted that, at one point, all four people went in the direction of Carpenter and Fourth Streets.  He said that the two men traveled in a diagonal on Fifth Street towards Adams Street.  The two men ran south, presumably on Adams Street, with Detective Janvier behind them.  (Tr. 26)  She was stopped by traffic while Detective Silvers continued to run south. At this time, he "couldn't see what [Detective Janvier] was doing because she was behind [him]," but he could hear her running.  (Tr. 26)  While he traveled behind, at first, he was eighteen to twenty feet behind and then probably "four to six feet behind" Mr. Fisher.  (Tr.26)[3]

Detective Silvers claimed in his testimony at the hearing that Mr. Fisher reached into his waist-band, pulled out a gun, and then pointed the gun at him.  He further declared that Mr.

---

[2]  Detective Silvers erroneously identified the first house on the block where he was located as "527," and indicated that the houses went up to "531." The location he defines is the 800 block of Fifth Street.

[3] The government did not elicit an in-court identification but the witness referred to the persons he arrested by name.

3

Fisher had his finger on the trigger and that he saw him put pressure on the trigger. Detective Silvers said he had his radio in his left hand and pulled out his gun with his right hand. He pointed it at the "back of Mr. Fisher's head." (Tr. 28) At the same time, he claimed that Mr. Fisher's gun was in line with Mr. Fisher's face, and he saw Mr. Fisher's eyes look at his partner Detective Janvier.

Detective Silvers said that Mr. Fisher's "hand starting to go limp, not limp, but releasing the pressure, his wrist went weak and he threw the gun in the middle of Adams Street." (Tr. 28) Mr. Fisher was tackled by Detective Silvers after this. He said he could not see where the weapon, which was retrieved by Detective Prado, landed.

After the arrest of Mr. Fisher, Detective Silvers went to the police station and completed his mandatory reports. These reports were filled out right after the incident. Detective Silvers agreed that the report should not leave out any major details. The reports also require that an officer list the offenses that occurred. The reports do not indicate that Mr. Fisher assaulted Detective Silvers. (Tr. 53) In the report, Detective Silvers said that Mr. Fisher began to run with the gun in his hand, and then he "*began* to turn the gun towards him." (Tr. 53) (emphasis added) Nowhere in this report, which included a two-page single space narration, did Detective Silvers say that he saw that Mr. Fisher *pointed* the gun towards him. (Tr. 55, 56) In fact, Detective Silvers described his own actions as first "point[ing]" the gun at Mr. Fisher. He claimed that the reason that he did not write that the gun was pointed at the time that he wrote his report, is because he "remembered it" and he "relived" it. (Tr. 55) This whole gun "pointing" incident, including the gun being dropped occurred within two seconds. (Tr. 62)

After filing out his report, Detective Silvers went to court and submitted charges against

4

Mr. Fisher and Mr. Rayshee Hunter, who were arrested as a result of this incident. Mr. Fisher was not charged with any charges that specify that he pointed a weapon at an officer. (Tr. 57) The sworn affidavits attached to the offenses charged include a narration of the events that occurred. Neither affidavit recounting the events in either case includes that Mr. Fisher pointed a gun at officer Detective Silvers. (Tr. 57) Detective Silvers sole explanation was that he did not believe that there was a charge for assaulting an officer. (Tr. 58)

At the police station, pre-<u>Miranda</u>, Detective Silvers had asked Mr. Fisher about his prior record. When he did not given the response Detective Silvers expected, he got into an argument with Mr. Fisher, in which he began cursing, stating, "mother-fucker, this isn't Pennsylvania, this is Delaware." (Tr. 59) The statement given to defense counsel as the official version of events indicated that this inappropriate language was one sided.

At the evidentiary hearing, the Court was provided photographs of the area around Fourth, Fifth, and Adams Streets, and the 800 block of Fifth Street. (Defense Exhibit 13,14, 17-19) These photographs, depict the lighting conditions and some of the locations testified to during the sentencing hearing.[4] The light in the area where the crucial incident occurred is poor and not conducive to permitting anyone to see what the officer claimed occurred.

At the close of the hearing, the government introduced police reports as proof of the stolen weapons enhancement. (Tr. 105)

**III.    ARGUMENT**

    **A.    The Enhancements must be proven beyond a reasonable doubt.**

---

[4] The photos were taken based on the police report, rather than some of the new testimony at the hearing.

The government seeks three separate enhancements; we contend that these must be proven beyond a reasonable doubt. In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court reiterated and extended its holding in <u>Jones v. United States</u>, 526 U.S. 227 (1999), that under the due process clause of the Fifth Amendment and the Sixth Amendment, that any fact, other than a prior conviction, which increases the maximum penalty for a crime, must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. The reasonable doubt standard has its roots in the Due Process Clause of the Fifth Amendment, as explained in <u>In re Winship</u>, where it was found that potential losses of liberty require the government to prove guilt beyond a reasonable doubt. 397 U. S. 358, 363-64 (1970). The United States Sentencing Guidelines include mechanisms to enhance a defendant's sentence. Most of the specific offense characteristics and upward adjustments in these guidelines usually require other criminal conduct. Since a defendant is presumed to be innocent, he should have the protections afforded his status.

In fact, the holding in <u>Apprendi</u> eliminated distinctions between elements and sentencing factors, stating that "[s]ince <u>Winship</u>, we have made clear beyond preadventure that <u>Winship</u>'s due process and associated jury protections extend, to some degree, to 'determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" 530 U. S. at 484 (citations omitted). Then, in <u>Ring v. Arizona</u>, 536 U. S. 584 (2002), the Supreme Court pronounced that any "increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the state labels it –must be found by a jury beyond a reasonable doubt." Continuing, <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), applied <u>Apprendi</u> to a state guideline sentencing scheme finding that it was unconstitutional since it did not permit

the jury to find facts increasing punishment. The Court effectively chose an "impact" test, focusing on the impact of such facts on punishment, rather than on the formalistic distinctions between sentencing factors and offense elements. Its concern was not simply about a fact's effect on the statutory maximum, but more generally, about its effect on punishment. United States v. Malouf, 377 F. Supp. 2d 315, 324 (D. Mass. 2005) (quoting Blakely 124 S. Ct. 2537).

These precursors to United States v. Booker, 124 S. Ct 738 (2005), resulted n the Federal Sentencing guidelines being held to violate the Sixth Amendment. The majority in Booker restated the premise of the prior cases, that with respect to facts that should be found by a jury, they must either be "reflected in the jury verdict or admitted by the defendant." The Supreme Court's Booker line of cases instruct that a sentence imposing punishment are only constitutional if all of the necessary facts supporting that sentence are found beyond a reasonable doubt. In other words, a sentence that deprives a defendant of liberty based on facts found only by a preponderance of the evidence violates the Fifth and Sixth Amendments, and therefore is not "reasonable" under Booker. An unreasonable sentence will not stand.

Thus, despite the now advisory position of the Sentencing Guidelines, we contend that the reasonable doubt standard is a requirement for portions of the sentencing guidelines. As noted in the recent decision by Judge Panner in United States v. Sielgelbaum, CR No 02-179-PA (D. Or. Jan, 2005), referring to the Supreme Court, "at least five justices have said that sentence enhancements are of sufficient importance to warrant application of the reasonable doubt standard in some instances." The court stated that a "fact used to enhance a sentence if not admitted, must be proven beyond a reasonable doubt rather than by a preponderance of the evidence." Id. at 6. This is because Booker addressed the Sixth Amendment issue but not the Fifth Amendment

7

reasonable doubt issue. In at least two district court cases, district judges had held that they will not consider sentencing facts not charged and proven to a jury or admitted. United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1027 (D. Neb. Feb 1, 2005); United States v. Ochoa-Suarez, 2005 WL 287400, 2005 U. S. Dist. Lexis 1667 (S. D. N. Y. Feb. 7, 2005). While pre-Booker, the Third Circuit has ruled that a preponderance of the evidence standard applied, we contend that is not the law now. See United States v. Mobley, 956 F.2d 450 (3d Cir. 1992).

We would also urge this Court that, to the extent that the sentencing statutes and rules do not set out a standard of proof, the constitutional avoidance principal requires this Court to construe sentencing statutes to require proof beyond a reasonable doubt for contested facts. Clark v. Martinez, 125 S. Ct. 716 (2005). A central principle of statutory construction is that where there is "serious doubt" regarding the constitutionality of a statute, a court must determine if a constitutional reading of the statute is fairly possible to avoid the constitutional question. Crowell v. Benson, 285 U. S. 22, 62 (1932). In order to save the constitutionality of the statutes applicable here, a reasonable doubt standard should apply.

Although generally, the guidelines have promoted a preponderance standard for many of its provisions,[5] the guidelines have given some support for "a beyond a reasonable doubt" standard in the context of enhancements based on *new and separate offenses*. USSG § 3A1.1(a) provides:

> (a) If the finder of fact at trial or, in the case of a plea of guilty or nolo contendre, the court at sentencing determines *beyond a reasonable doubt* that the defendant intentionally selected any victim or any property as the object of

---

[5] The continuing problem with the guidelines is that convictions proved beyond a reasonable doubt for one offense could cause the "tail to wag the dog" by resulting in substantially enhanced sentences that were subject primarily to only a reduced burden of proof.

8

>the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, disability, or sexual orientation of any person, increase by 3 levels. (emphasis added).

Both the background commentary to § 3A1.1 and the history of Amendment 521 found in Appendix C - Volume 1 (p. 444) to the guidelines manual, make clear that where there is a judicial finding as specified in this section, it is the equivalent of finding a separate hate crime. The Sentencing Commission require that the finding be made beyond a reasonable doubt. The explanatory notes to Amendment 521 in Appendix C identifies the Congressional intent underlying the amendment which created the "hate crime" enhancement, as limited to scenarios where the "finder of fact at trial determines beyond a reasonable doubt that the offense of conviction was a hate crime." The Commission, on its own, expanded the directive to include judicial findings at sentencing "that the offense was a *hate crime*," made pursuant to a guilty or *nolo* plea, and provided for the reasonable-doubt standard "to avoid unwarranted sentencing disparity based on the mode of conviction." (emphasis added). This provides clear precedent within the guidelines scheme for proof distinctions between enhancements constituting separate crimes and other guideline enhancements.

**B.    The facts supporting the enhancements under U. S. S. G. 3A1.2(c)(1) and 2K2.1(b)(5) were not proven beyond a reasonable doubt or by a preponderance of the evidence.**

U. S. S. G. 2K 2.1(b)(5) states:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense...increase by 4 levels."

U. S. S. G. 3A1.2(c)(1) requires:

[I]f in a manner creating a substantial risk of serious bodily injury, the defendant....knowingly or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom...increase by six levels.

In this case, the gravamen of the government's claim is that Mr. Fisher assaulted the officer. As an initial matter, the officer did not believe that there was an offense constituting assault on a police officer. Irregardless, the facts presented do not prove that there was an assault. The government's allegation is this case is that Mr. Fisher "'assaulted' the pursuing officer when he pointed a loaded gun at him from a distance of four to six feet and put his finger on the trigger." These allegations, which did not appear in the police report of this case, also did not result in any of the litany of charges lodged against Mr. Fisher in Delaware State Court. The credible facts do not include that any of the officers were shot at or that the gun was actually turned toward the officers. Instead, the police report states that the gun was thrown on the ground after the officer pointed his gun and was four to five feet behind Mr. Fisher. The officer's supposition that the gun would be pointed at him is insufficient to meet the requisite quantum of proof. As result, Mr. Fisher did not commit another felony offense in connection with the felon in possession charge, nor did he assault the officer during the course of flight, creating a substantial

10

risk of serious bodily injury.  Since neither apply, the Court should not enhance the sentence as proposed by the government.  A review of the aspects of the officer's testimony bear out this contention:

|  | Police report (date of incident) Charges filed | Court room testimony (ten month later) |
|---|---|---|
| who pointed gun? | Officer | Fisher, then officer |
| was the gun pointed? | The subject...pulled a black handgun out of his waist area and ran with the gun in his right hand. This subject began to turn the gun toward these officers. | He pulled the gun out of his waistband and as he was running he brought the gun around and pointed it at me |
| was the finger on the trigger? | not in the report | He had his finger on the trigger....I saw the pressure starting to get on the trigger, |
| when was hand on the trigger? | not in the report | when Detective Silvers "had [his] gun pointed at the back of his head." |
| Where was gun thrown after incident? | The black gun was thrown in the 400 Block of North Adams Street | Incident occurred one truck length away from corner of Fifth and Adams, gun thrown in middle of Adams Street |

The rendition of events provided by Detective Silvers at the hearing meets neither a preponderance nor a beyond a reasonable doubt standard.  Detective Silvers would have the Court believe that a suspect pulled out a gun,  put pressure on the trigger, then Detective Silvers pulled on his trigger, and no one was shot.  He further claims that, at night, while following two men running on a dark Street, he was able to see that one of the men (who happened to be dark skinned) put pressure on a black gun.  He further proposes that he could see this man who was to have been stopped at the corner of Fifth and Adams be able to throw the gun a full block into the

400 block of Adams Street.

In determining whether the government has met its burden, the Court has not only what the officer stated at the motions hearing, but the crucial statements he made in his police report and the charges filed in state court. In considering the police report statements, which were also used in two affidavits, the law requires that those statements not just be considered as impeachment but as substantive evidence. Fed. R. Evid. 801(d)(1). 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, § 801(d)(1)(A) [01] (1992) (sworn statements under oath inconsistent with in court testimony are substantive evidence.). The sworn statement made near the time of the event contradicts the new testimony before the Court.

A more, or equally plausible, explanation for what occurred was that the gun was being removed to be thrown away, as did occur. The short two seconds that this event transpired did not, in fact, result in Mr. Fisher pointing a gun or even attempting to shoot anyone but in discarding the weapon into the Street. The officer's animosity over Mr. Fisher's running, over what his record entailed, and his not providing information, as requested, has escalated this incident to more than what actually transpired.

### C. Imposition of enhancements under both U. S. S. G. 3A1.2(c)(1) and 2K 2.1(b)(5) constitutes double counting.

As to whether Mr. Fisher should be given enhancements for both U. S. S. G. 3A1.2(c)(1) and 2K2.1(b)(5), the Third Circuit has not addressed the specific issue raised here. In this case, the two sections of the guidelines are being used to enhance Mr. Fisher's sentence. The conduct and offense for which the government seeks to enhance his sentence both include that there was an assault against a specific police officer. In United States v. Chichy, 1 F.3d 1501, 1506-07 (6th

12

Cir. 1993), the Sixth Circuit noted that "'[n]othing in the Guidelines or its commentary indicates the Sentencing Commission intended cumulative punishment' for the same conduct." Id. at 1506 (citing Romano, 970 F.2d 164, 167 (6th Cir. 1992) (citing United States v. Werlinger, 894 F.2d 1015 (8th Cir. 1990)). Even the circuits that have applied the enhancement, as cited by the government, have included conduct that evidences activity more directed at an officer than occurred here. See United States v. Jackson, 276 F.3d 1213 (11th Cir. 2001) (violent struggle occurred during arrest). In United States v. Bowie, 198 F.3d 905 (D. C. Cir. 1999), an officer was physically assaulted, a struggle occurred and the defendant reached to obtain a weapon while the officer was attempting to handcuff him; moreover, no issue was raised as to whether the enhancements under § 2K2.1 and 3A 1.2 constituted double counting. In United States v. Coldern, 359 F.3d 1253 (10th Cir. 2004), the defendant who was involved in an argument with a store clerk, reached for a rifle and affirmatively pointed it at an officer who arrived at the scene. In United States v. Lee, 199 F. 3d 16, 17 (1st Cir. 1999), the defendant struck two officers in the chest and then "thrashed about," and while officers tried to "subdue him," he "repeatedly reached for his waist area" where a gun was located.

### D.  Stolen Weapon Enhancement

The government seeks a two-point enhancement for possession of a stolen weapon. At the time it is alleged that the weapon was stolen, Mr. Fisher was incarcerated. In United States v. Mobley 956 F.3d 450 (1992), the Third Circuit ruled there was no requirement that a defendant know that a weapon was stolen in order for the enhancement to apply.[6] The defense objection

---

[6] Interestingly, had Mr. Fisher been charged with having stolen the gun in this case, he would likely have received the same penalty as would apply to the mere fact that the weapon was reported stolen at some point. The defense will urge at sentencing that a sentence which

13

urges that the proof in this case is insufficient to meet the preponderance or reasonable doubt standard to show that the weapon was stolen. The government has only submitted police reports that allege that an individual that reported his weapon stolen in 2003.

In <u>United States v. Shepard</u>, 125 S. Ct. 1254 (2005), the Supreme Court found that a police report was insufficient proof of what the nature of a generic burglary conviction entailed. In <u>Shepard</u>, the defendant was charged with 18 U. S. C. 922(g)(1) and faced a 15 year penalty under 924(c). The defendant had pled guilty to the predicate offenses, however proof of whether they qualified as crimes of violence was not evidenced by the charging documents or the statute. The Court required a narrow approach to what could be considered to prove that the burglaries were predicates.

<u>Shepard</u> is instructive in that it applies <u>Apprendi</u> and <u>Jones</u> to require jury or admitted proof of facts that would enhance a defendant's sentence and rules against the notion that police reports are reliable indicators of the facts where there has not been an admission to their content. In this case, there was no conviction to show that it was actually stolen, nor was there information to show that the reporter was a reliable informer. And, as stated, Mr. Fisher had nothing to do with stealing the weapon, having been incarcerated at the time that it is alleged that it was taken.

---

incorporates this enhancement based on the facts here unreasonable.

## CONCLUSION

Wherefore, for these reasons and any other reasons that shall appear to the Court, the defendant requests that his guideline range be calculated at 30-37 months.

                                Respectfully submitted,

                                /s/
                                Penny Marshall, Esquire
                                Federal Public Defender
                                704 King Street Suite 110
                                Wilmington, DE  19801
                                (302) 573-6010
                                Attorney for Defendant Tracy Fisher

Dated:  November 21, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | Criminal Action No.  05-12 (GMS) |
| | : | |
| TRACY LAMAR FISHER | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

Undersigned counsel certify that two copies of this Brief in Support of Defendant's Motion to Suppress were hand delivered on November 21, 2005, to a box designated for the U.S. Attorney's Office located in the U.S. District Court Clerk's Office addressed to:

Adam Safwat, Esquire
Assistant U.S. Attorney
1007 Orange Street, Suite 700
Wilmington, DE  19801


/s/
Penny Marshall, Esquire
Federal Public Defender
704 King Street Suite 110
Wilmington, DE  19801
(302) 573-6010
Attorney for Defendant Tracy Fisher