IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-12-GMS |
| | : | |
| | : | |
| TRACY FISHER | : | |
| | : | |
| Defendant. | : | |

**REPLY TO GOVERNMENT SENTENCING MEMORANDUM IN
SUPPORT OF SENTENCING ENHANCEMENTS**

                                                      Penny Marshall, Esquire
                                                    Federal Public Defender
                                                    704 King Street, Suite 110
                                                    Wilmington, DE  19801
                                                    (302) 573-6010
                                                    Attorney for Defendant Tracy Fisher

Date: January 5, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENTS

I.   A Reasonable Doubt Standard is Required Where Criminal Conduct is
     Used to Enhance a Guideline Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  This Court Is Not Required to Reach the Burden of Proof Issue in That Even under a
     Preponderance Standard There Is Not Sufficient Evidence to Apply Enhancements under
     §2k2.1(b)(5) and §3 a 1.2(c)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. The Evidence Does Not Support Enhancements for
     Both 2k2.1(b)(5) and 3 a 1.2(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  An Unsworn Police Report is not Adequate Poof to Apply the a Stolen Weapon
     Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TABLE OF AUTHORITIES

**CASES**

Apprendi v. New Jersey, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pasim

Blakely v. Washington, 124 S. Ct. 2531 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Clark v. Martinez, 125 S. Ct. 716 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Winship, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McMillan v. Pennsylvania, 477 U. S. 79, 88 ( 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ring v. Arizona, 536 U. S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States v. Askew 193 F.3d 1181, 1183 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Booker, 124 S. Ct 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pasim

United States v. Green, 25 F.3d 206 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Grier No. 05-1698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1027 (D. Neb. Feb 1, 2005) . . . . . . . 4

Jenkins v. Anderson, 447 U.S. 231, 239 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

United States v. Kikamura, 918 F.2d 1084 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Malouf, 377 F. Supp. 2d 315, 324 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . 1,2

United States v. McDowell, 888 F.2d 285 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Miller, 417 F.3d 358 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. McNeill, 877F. 3d 448 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Shepard, 125 S. Ct. 1254 (2005)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Sielgelbaum, CR No 02-179-PA (D. Or. Jan, 2005) . . . . . . . . . . . . . . . . . . . 4

United States v. Williams 577 F.2d 188 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


United States v. Wong, 3 F.3d 667 (3d Cir. 1993) .................................... 9

**OTHER AUTHORITIES**

Fed. Rule of Evid. 801 (d)(1)(A) ........................................... 6

Wigmore on Evidence § 1042(Chabourn rev. 1970) ............................ 6

Weinstein's Federal Evidence §607.06 ....................................... 6

I.   **A Reasonable Doubt Standard is Required Where Criminal Conduct is Used to Enhance a Guideline Sentence**

Mr. Fisher has urged that a beyond a reasonable doubt standard applies to the enhancements that the government is requesting that this Court utilize to dramatically increase his sentence for possession of a firearm by a convicted felon. In opposition, the government attempts to argue that the Supreme Court opinion in United States v. Booker 125 S. Ct. 738 (2005) and the Third Circuit have "foreclosed" that argument. (Govt. bf at 7) However, this view misapprehends the current state of affairs post-Booker and Third Circuit precedent. The evolving jurisprudence after Booker has encouraged "a new concern for procedural fairness in the finding of facts," which is fully applicable to this case. See United States v. Malouf 377 F. Supp.2d 315 (D. Mass. 2005).

The focus of the Booker opinion was on making the Sixth Amendment relevant to enhanced sentences. In essence, the Supreme Court's opinion held that "the Sixth Amendment prevents federal judges from making factual determinations that increase a defendant's sentence under the Guidelines on the basis of facts not reflected in a jury verdict." Malouf 377 F. Supp. 2d. at 324. This was in keeping with the prior precedent of Apprendi v. New Jersey, 530 U.S. 466 (2000) in which the prescribed statutory maximum triggering the Sixth Amendment was defined as "the maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 124 S. Ct. 2531, 2537 (2004). The government implies that reasoning of this line of cases applies only to the actual statutory maximum; yet, the Supreme Court opinions in Booker, Blakely and Ring v. Arizona 536 U. S. 584 (200), do not talk merely about statutory maximum but about maximum sentences. Indeed

1

the holding in Booker made clear the guideline ranges rather than just what a statute proscribes could constitute a maximum sentence.

The approach of the Supreme Court in Booker was to "broaden Apprendi by requiring that all facts "which the law makes essential to the punishment' be subject to Sixth Amendment protections" United States v. Malouf 377 F. Supp 2d 315, 324 (D. Mass. 2005). Thus the Supreme Court's analysis centered on the impact of such facts used to establish punishment. The concern was not simply about a fact's influence on the statutory maximum, but more generally, about its affect on punishment.

Ultimately, the Booker opinion set reasonableness as the standard for sentencing a defendant. We contend that inherent in this reasonableness standard is the duty of the Court to take into account a defendant's constitutional rights beyond the Sixth Amendment.

Despite the government's protestations, the Booker opinion did not actually address what burden of proof is to be used for sentencing determination since the holding was directed at jury trial rights under the Sixth Amendment. Thus the limits of the Booker opinion is that it did not advise courts as to whether the reasonable doubt standard under the Fifth Amendment Due Process Clause applied to sentencing enhancements. In his dissent, Justice Thomas spelled out the application: "the Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposes on the basis of facts found by a jury or admitted by defendant. Booker 125 S. Ct. at 798, n. 6.

Although the Third Circuit had, before Booker, held that a preponderance standard applied to Sentencing Guideline enhancements, generally, it had not decided the issue of what

2

standard applied when a new offense is alleged. United States v. McDowell 888 F.2d 285 (3d Cir. 1989). In McDowell the Court stated "We explicitly do not address the burden of proof in cases where a sentencing adjustment constitutes more than a simple enhancement but a new and separate offense." Indeed in United States v. Kikamura 918 F.2d 1084 (3d Cir. 1990) the Third Circuit recognized that in instances where new sentencing factors act as "a tail which wags the dog of the substantive offenses"a heightened standard of proof may be required to enhance a sentence. Id at 1100-1 citing McMillan v. Pennsylvania 477 U. S. 79, 88 ( 1986) The Government's brief relies on United States v. Miller 417 F.3d 358 (3d Cir. 2005) to urge the issue of burden of proof has been resolved. The opinion however is inapposite. Miller was a post Booker remand in which the Third Circuit did not address the issue of enhancements based on new or separate criminal conduct. Indeed, the Circuit is currently reviewing United States v. Grier, No. 05-1698 in which the Court asked for supplemental briefing on the issue of whether a new offense enhancement must be proven beyond a reasonable doubt. Certainly if the issue were decided supplemental briefing would not have been necessary.

    The Government attempts to avoid the opinion in United States v. Siegelbaum 359 F. Supp.2d 1104 (D. Oregon 2005) by claiming that the court's plain language was taken out of context. In reality, that court used the reasonable doubt standard as a part of the reason why Booker retroactivity could be applicable.[1] The Judge recognized the "second component to Blakely/Booker" as being "Facts used to enhance a sentence, if not admitted, must be proven

---

[1]The Government complains that Siegelbaum was made as "part of a retroactivity analysis".(Gvt. bf. 9) At the same time, the government relies on McReynolds v. United States 387 F.3d 479 (7th Cir. 2005), which is also a retroactivity case. McReynolds opined, amongst other things, that the sentencing standard post Booker would be by a preponderance.

beyond a reasonable doubt rather than by a preponderance of the evidence. Id at 1107. There was nothing more clear than the court's language recognizing the critical importance of the highest standard where liberty is at stake. The opinion emphasized this requirement when it recognized that "At least five [Supreme Court] Justices have said that sentence enhancements are of sufficient importance to warrant application of the reasonable doubt standard in some instances", citing to Apprendi, Blakely, and Booker.

The reason why the Due Process Clause requires proof beyond a reasonable doubt in the context of sentencing begins with a basic proposition. As cited in Siegelbaum

> The Supreme Court has acknowledged that the standard of proof can significantly impact fact finding accuracy and society's confidence in the result. In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error") and at 364 ("the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law")

In Winship, the Supreme Court upheld the basic tenet that persons accused of crimes are presumed innocent and entitled to the due process protection of proof beyond a reasonable doubt. The protected person was a juvenile confronting a delinquency proceeding where there is no right to a jury trial and the end result is not a criminal conviction. Because of the possibility of loss of liberty, the highest standard of proof was required.

For sentencing purposes the due process clause is just as important where new criminal conduct is alleged. As recognized in Huerta-Rodriguez, 355 F. Supp2d 1019, 1024 (D. Neb. 2005) "[t]he Due Process Clause is implicated whenever a judge determines a fact by a standard

4

lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact." citing Booker at 754-55;Apprendi, 530 U.S. at 494, 120 S.Ct. 2348." Here, due process mandates that the government prove that Mr. Fisher committed the new offense of an assault on an officer by proof beyond a reasonable doubt.

Where there is any question of what standard should be applied,. the higher standard is the proper one. The government's counter to the constitution avoidance issue is to characterize it as a vagueness issue only applicable because of the defense's reference to the reasonable doubt language in §3 A 1.1. However, constitutional avoidance is a separate argument: the principle applies when there are two possible statutory constructions and "one of them would raise a multitude of constitutional problems, the other should prevail - whether or not those constitutional problems pertain to the particular litigant before the Court." Clark v. Martinez, 125 S. Ct. 716, 724 (2005) Since there is no statute or rule mandating a particular standard for the sentencing guidelines, to avoid the constitutional problem, it is necessary to apply a reasonable doubt standard to meet the demands of due process. §3 A 1.1 only serves as an example that the guidelines do recognize reasonable doubt in some context; the point being that there is no difference between hate crimes and other criminal offenses. However, the government's recognition of a vagueness problem supports the defense argument there might be two possible statutory constructions and that constitutional avoidance calls for the use of the reasonable doubt standard..

**II.    This Court Is Not Required to Reach the Burden of Proof Issue in That Even under a Preponderance Standard There Is Not Sufficient Evidence to Apply Enhancements under §2k2.1(b)(5) and §3 a 1.2(c)(1)**

The testimony of Detective Silver does not meet either proof beyond a reasonable doubt or by a preponderance standard that Mr. Fisher committed the offenses of assault on a police officer.

> Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence.

United States v. Askew 193 F.3d 1181, 1183 (11th Cir. 1999) The government brief attempts to minimize the different versions given by the officer. It is well recognized that contradictions in testimony may be used to distrust the testimony of a witness Weinstein's Federal Evidence §607.06. If a prior statement is under oath a trier of fact may disregard the current testimony an take the prior testimony as being true. Fed. Rule of Evid. 801 (d)(1)(A). Where a witness omits crucial information that he would be expected to provide this might also cause his testimony to be distrusted. As the Supreme Court has recognized, "[c]ommon law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." Jenkins v. Anderson, 447 U.S. 231, 239 (1980). See also 3A Wigmore on Evidence § 1042(Chabourn rev. 1970) ("A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. This is conceded as a general principle of evidence.").

Here, Det. Silvers testimony was directly contradicted by his police report. In his signed report, and in his state court documents, he said that Mr. Fisher began to turn the weapon toward the officers, but before this Court he said that Mr. Fisher pointed it

6

directly toward him. The Detective, upon cross examination, reluctantly admitted that his report does not say that the gun was pointed at him. Similarly, beginning to turn the weapon toward him is also in direct contradiction to pulling on the trigger.[2] Moreover, Det. Silver, an officer experienced in how to write reports [3] and preparing documents for court swore that his initial version was true. He also did not list charges for Mr. Fisher consistent with what he said before this Court nor had he prepared an additional reports to substantiate his new version.[4] Even if the Detective claims that he did not need the information in the report to remember what occurred, certainly he would have placed "the facts" in the state court documents since those reading the documents were not present at the crime scene. *The new embellished version is not worthy of belief*. Further, the incredulity of Silver's explanation that did not know after eight years as a police officer that one could be charged for pointing a gun at an officer is not a "minor argument."(Gvt. bf. 21) This trained officer testified that he had a supervisor, that he had a partner and presumably he went to court. Any one of these individuals could have enlightened him had he placed his new "facts" in his report.

Other factors also point to the lack of trustworthiness of his statement. The

---

[2] A viewing of the weapon given its size, color and type make it highly unlikely that the officer could have observed the trigger being pulled. It is also of concern that Silver claimed another officer actually collected the gun; it is unlikely that this officer, rather than Silver would not have actually checked the gun. In any event neither Silver nor the officer he specified were listed on the tag connected to the weapon.

[3] He admitted that the reports should not leave out "major" details. (Tr. 52)

[4] In an analogous context, a criminal defendant or other witness who fails to respond when it expected that s/he should, it may be argued that the person has made an adoptive omission under Fed. R. Evid 801(d) (2) (B) See United States v. Williams 577 F.2d 188 (2d Cir. 1978).

lighting near the incident was not substantial enough to see what Det. Silvers claimed occurred. Clearly, it was dark since the officer used a flashlight during his pursuit. Also, the defense photographic exhibits and the testimony of the witness who took the pictures bear witness to how dark it area was.  The government's rendition of the facts says that Mr. Fisher was "tackled on Adams Street, just north of Carpenter Street". (Gvts bf. 9) That area is, even according to the Agent, "pretty dark". (Tr. 46, 69).  See Def. Exh. 19.

  The Detective's in court version of where he was observed the gun being aimed was that Mr. Fisher was that he was only a car length away from Fifth Street,(Tr. 30) and he further implied that the lights at the Corner Bar illuminated the area.(Tr. 68) The government's change from this version may be due to two factors: First, in a prior hearing in which the officer was sworn, he said that he was thirty or forty feet south of Fifth Street when he saw the weapon.  Secondly, Silvers testified and said in his report that Mr. Fisher threw the gun into the 400 block of North Adams Street. This area is a four lane well travel area with several lanes of traffic and parking. The area where it would have been located is dark and not well lit.

  The Government attempts to bolster Det. Silvers testimony by alleging that he would not perjure himself and risk the career of his partner, and that he would have had to conspire with his partner to both perjure themselves if necessary.  This argument is only an attempt to bring in the testimony of Det. Janvier through the back door and imply that her testimony would be consistent.  The government, who had the burden of proof in this case chose not to call Det. Janvier and have her subjected to cross examination. Whether Det. Silvers was mistaken or gave false or embellished testimony, his explanations should stand

8

or fall based on his testimony and not that of a witness who was not called. The Court does not have to decide the motives for the testimony, it just has to determine where there has been sufficient proof to justify the substantial enhancement requested by the government.

If this Court is left with the version told by the officer in the police report then those facts are insufficient to establish that Mr. Fisher intended the crime of assault on a police officer nor did he create a substantial risk of bodily injury to the officers by assaulting them. The original version establishes that the officers were running behind Mr. Fisher; that a weapon was pulled out; that the weapon was not pointed at the officers and that it instead was thrown into the street away from the officers.

### III.  The Evidence and Law Does Not Support Enhancements for Both §2k2.1(b)(5) and §3 a 1.2(c)(1)

The decision cited by the government in support of their request for a ten point enhancement for the same activity should not apply. As the government concedes this issue has not been addressed by the Third Circuit.  The cases cited by the government from the Circuit are distinguishable.  In United States v. Wong 3 F.3d 667 (3d Cir. 1993) the enhancement for more than minimal planning and for organizer leader related to different activities and respond to different harms that cold apply to the offense of conviction. In United States v. McNeill 877F. 3d 448 (3d Cir. 1989) an official victim enhancement was applied to the offense of conviction. In United States v. Green 25 F.3d 206 (3d Cir. 1994) the Court responded to an enhancement to the guideline for the actual offense and did not find double counting.

9

In the instant case, the government seek to add two enhancements to the offense of conviction. Both of the enhancements relate to a claim that the defendant committed the criminal charge of assaulting a police officer. Given the all encompassing §2K 2.1 that asks what "felony offense" was committed it is unfair and unconstitutional to attempt to parse it into two violations and two sentencing enhancement. The offense that the government has actually contended that Mr. Fisher committed was assaulting a police officer, that offense cannot be divided into a separate assault and then an assault on a police officer where one crime is said to have occurred.

Furthermore, while some other circuit have taken a different view, as recognized in the defense opening brief, this case is not factually more egregious than any of the ones cited by the government. In this case, the reliable evidence presents at most ambiguous actions that did not harm anyone and which were not a direct assault. Mr. Fisher's actions of throwing the gun away did not present not a substantial danger to the officers but rather an effort to avoid the any threat to himself and to the officers.

### IV.  An Unsworn Police Report is not Adequate Poof to Apply the a Stolen Weapon Enhancement

In Mr. Fisher's case the government relies on a police report which resulted in no one being charged or convicted of stealing a weapon. The government, who had the option, chose not to call any witnesses to substantiate the claim that the weapon was stolen. The only substantiation of the weapon being stolen is the unsworn report by the purported owner of the weapon.

Contrary to the Government's assertion <u>United States v. Shepard</u>, 125 S. Ct.

10

1254 (2005) is instructive. The government would urge that rumors, speculation and any other information is sufficient for use at a sentencing hearing: "the use of all available in formation-including police reports- by a sentencing court ....does not raise <u>Apprendi</u> concerns."(Gvt. bf. at 23)  Although <u>Shepard</u> does not specifically address less that statutory maximum sentences, it does emphasize that judicial fact-finding should be done based on adequate evidence.  Here, as in Shepard a police report is not sufficient.

    Moreover, since Mr. Fisher was incarcerated on August 10, 2003, the enhancement serves little purpose. Mr. Fisher neither stole the weapon or can reasonably be said to have obtained the weapon from any that could have taken it.

## CONCLUSION

For the reasons specified in this pleading and those in Defendant's opening brief, the defense request that the Court not find the enhancements suggested by the government to be applicable.

                                                Respectfully submitted,
/s/
                                                Penny Marshall, Esquire
Federal Public Defender
704 King Street Suite 110
Wilmington, DE  19801
(302) 573-6010
Attorney for Defendant Tracy Fisher

Dated:  January 5, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | Criminal Action No. 05-12 (GMS) |
| | : | |
| TRACY LAMAR FISHER | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

The undersigned attorney for defendant hereby certifies that the attached Response to the Government's Sentencing Memorandum in Support of Sentencing Enhancements is available for public viewing and downloading and was electronically delivered on January 5, 2006, to:

Adam Safwat, Esquire

Assistant U.S. Attorney

1007 Orange Street, Suite 700

Wilmington, DE  19801

/s/

Penny Marshall, Esquire

Federal Public Defender

704 King Street Suite 110

Wilmington, DE  19801

(302) 573-6010

Attorney for Defendant Tracy Fisher